**UNITED STATES of America**

**v.**

**Raymond BARTELS.**

**CR. No. 97–CR–12–1.**

United States District Court, D. Vermont.

Oct. 23, 1997.

Gregory Lane Waples, Office of U.S. Atty., District of Vermont, Burlington, VT, for U.S.

Eric Richard Benson, Burlington, VT, for Raymond Bartels.

## OPINION AND ORDER

SESSIONS, District Judge.

On January 30, 1997, the grand jury returned a four-count indictment charging Defendants Raymond Bartels and Donald Stanhope with various drug-related offenses allegedly occurring between December 1993 and August 1994. In substance, the indictment charges Bartels with distributing cocaine from his home in California to Stanhope in Vermont by use of express mail packages. The matter came before the Court on motions filed by Bartels seeking dismissal of the indictment and suppression of evidence. A hearing was conducted on all outstanding motions on September 15, 1997.

### I. *Factual Background*

On July 12, 1994, Postal Inspector Terrance Loftus detected a suspicious package during a routine postal inspection. The

package was completely wrapped in duct tape. It was addressed to George Boster at a post office box in Richford, although the subscribers to the box were Stanhope and his wife. After determining that its place of origin was a valid address but the person listed on the return address did not reside at that location, Loftus arranged for a certified drug dog to sniff the package. The dog's reaction indicated the presence of an illegal drug.

Loftus obtained a search warrant from Magistrate Judge Jerome J. Niedermeier on July 12 and searched the package on that date. Inside the box, Loftus found four ounces of cocaine. The package was then resealed. Later Cynthia Stanhope picked up the package. When Loftus confronted her about the package, she denied knowledge of the cocaine.

Subsequently, Loftus determined that 27 express mail packages had been sent by Cynthia Stanhope to Bartels, wife in Fresno, California between December 1993 and late June 1994. Loftus also learned that 12 other packages had been express mailed from Fresno to the Stanhopes' post office box during the first six months of 1994. Loftus asked Cynthia Stanhope about these packages. She replied that Bartels intended to return to Vermont and the contents of the packages consisted of real estate literature. When interviewed by Loftus in August 1994, Bartels confirmed that the packages contained real estate literature.

The Government obtained handwriting and fingerprint exemplars from the Stanhopes, Bartels, and his wife, Ruth Herron. Comparisons of these exemplars to express mail labels indicated that all thirteen labels on packages sent from Fresno to Vermont, including the one in which cocaine was found, were written by either Bartels or Herron. Bartels' fingerprints were identified as being on two of those labels. Cynthia Stanhope was found to have written the labels affixed to all Fresno-bound parcels.

Soon after speaking with Loftus, Bartels retained an attorney, Ronald Sawl, to represent him in connection with the Vermont investigation. Negotiations were conducted over the next month between AUSA Peter

Hull and Attorney Sawl. According to Sawl, Hull represented that Bartels, fingerprints were "all over" the express mail package containing the cocaine. Hull denies making those representations. In fact, the comparisons of fingerprints to the labels and packages was not conducted until July, 1995.

On September 13, 1994, Bartels and Sawl signed a plea agreement with AUSA Hull. Under the terms of the agreement, Bartels waived indictment and agreed to plead guilty to an information charging him with distributing cocaine. He also agreed to cooperate with the Government and, provided that he gave substantial assistance, the Government agreed to move for a downward departure.

The Government filed the Information in September 1994. Bartels was arraigned on January 26, 1995 and entered a not guilty plea. However, Bartels decided to withdraw from the agreement. In a motion submitted to the Court on behalf of Bartels, his counsel argued that Sawl had represented that he would receive little jail time although he was facing a habitual offender enhancement, that Sawl induced him to plead guilty and that he was afforded incompetent counsel. U.S. Acting District Judge Fred I. Parker granted Bartels the opportunity to withdraw from his agreement. Eventually, the Government filed a Motion to Dismiss the Information under Fed. R. Cr. P. 48(a), and the Information was dismissed without prejudice on August 11, 1995. AUSA Hull left the United States Attorney's Office soon thereafter, and the case was transferred to AUSA Gregory Waples.

II. *Discussion*

Bartels has filed a number of motions which the Court will address in turn.

A. *Motion for Notice of Government's Intention to Introduce Other Crimes Evidence* (Paper # 17) and *Motion In Limine to Suppress* (Paper # 28).

Bartels seeks to require the Government to disclose other crimes evidence prior to trial and to exclude testimony concerning Bartels' 1990 conviction for distribution of cocaine. Bartels argues that his conviction

would be offered to establish propensity to commit this type of offense and is therefore inadmissible under Fed.R.Evid. 404(b), and that the prejudicial impact of this evidence would substantially but weigh its probative value under Rule 403.

The Government proffered the 1990 conviction as the only evidence it may intend to introduce under Rule 404(b). The Government also proffered that it does not intend to introduce such testimony as part of its case in chief, nor disclose such evidence during its opening statement. The Government reserved the option of seeking to introduce such evidence if Defendant either by testimony or argument introduces a claim that Bartels did not know that the package contained cocaine under the theory that such testimony would relate to "knowledge" of criminal activity under Rule 404(b).

Admissibility of Bartels' 1990 conviction depends upon its purpose and the context in which it is to be offered. In light of the Government's proffer that the conviction would not be introduced in its case in chief, resolution of its admissibility is premature at this stage of the case. The Court will grant the motion to require the Government to give notice of Rule 404(b) material, but deny as premature the motion to exclude such evidence. The Government is instructed to inform the Court of its intention to introduce evidence of the conviction at trial prior to disclosure to the jury. The Court will then address its admissibility under Rule 404(b) in the context of all of the other evidence and the respective positions of the parties.

B. *Motion in Limine: Withdrawn Plea Agreement* (Paper # 18)

Bartels seeks to exclude reference to the withdrawn plea agreement at trial pursuant to Fed.R.Evid. 410. Consistent with Judge Parker's Order of June 15, 1995, the Court grants the motion.

C. *Motion to Dismiss Defendant* (Paper # 18)

Bartels filed a Motion to Dismiss, arguing that the Government's delay in prosecuting him violated his Sixth Amendment "speedy trial" rights. He relies upon the four factors set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972): "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

■ At the outset, Bartels applies the wrong constitutional standard. The Speedy Trial provision of the Sixth Amendment safeguards a defendant's right to proceed to trial within a reasonable period of time once an indictment has been filed. Dismissal is permissible on speedy trial grounds only if the period of delay between the filing of criminal charges and trial is excessive. In the instant case, the charging document in the federal system is an indictment. The indictment in this case was filed approximately one month before Bartels' motion to dismiss.

■ Bartels, claim relates to pre-indictment delay under the Due Process Clause. Essentially he argues that the two and one-half year delay between the initiation of the investigation in July, 1994, and his indictment in January, 1997, was excessive. To assess the impact of pre-indictment delay, the United States Court of Appeals for the Second Circuit has stated:

> "[t]o establish denial of due process based on excessive pre-indictment delay [a defendant] bears the heavy burden ... of showing not only that he was prejudiced by the delay but that it was so unfair as to violate fundamental concepts of fair play and decency, such as would occur if the prosecutor deliberately used the delay to achieve a substantial tactical advantage."

*United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir.1990). *See also United States v. Greer*, 956 F.Supp. 525, 527–28 (D.Vt.1997).

First, the Court finds that the delay was not excessive. Much of the delay was caused by Bartels' decision to enter into a plea agreement and then to withdraw from it. Once withdrawal occurred, the grand jury took approximately 17 months to indict Bartels, a time period the Court finds not to be excessive. Further, there is no indication that Government counsel used the delay for tactical purposes. A personnel change took

place within the United States Attorney's Office which caused the case to be transferred to another prosecutor, with resulting delays.

The Court also finds that Bartels has failed to establish prejudice caused by the delay. He argues that a witness in California who was aware of his receipt of real estate literature in packages from Vermont has disappeared. There is no proof regarding the substance of this witness' testimony, nor when this witness disappeared. Further, although Bartels has been aware of the pending investigation since August 1994, he made no efforts to contact this witness until the indictment was returned in January 1997. Apparently, Bartels has another witness who can testify to the contents of the packages, Cynthia Stanhope. This missing witness becomes duplicative. Prejudice to Bartels due to the absence of this witness is tenuous and speculative at best.

The Court finds that the delay between August 1994 and the return of the indictment was not excessive, that the Government's delay was not for the purpose of obtaining tactical advantage, and that Bartels has failed to establish prejudice from the delay. The Court therefore finds the Motion to Dismiss without merit.

D. *Motion to Dismiss Defendant For Prosecutorial Misconduct* (Paper # 35)

■ Bartels seeks dismissal of the indictment based upon misconduct of AUSA Hull, stemming out of alleged misstatements made by Hull to encourage Bartels to enter into the plea agreement. He also seeks dismissal based upon misconduct of agents in interviews with Bartels and Christine Reynolds at the Reynolds residence in June 1997.

Attorney Sawl vehemently argues that Hull told him that Bartels, fingerprints were on the cocaine package. Hull denies making such statements. In fact, Bartels' fingerprints were taken from labels on two packages sent from Fresno to Vermont, although not from the package containing the cocaine. Further, fingerprint comparisons were not done until approximately ten months after the plea agreement was made.

Customs agents visited Ms. Reynolds in June 1997 based upon a complaint that Bartels had possessed and sold a firearm in violation of his conditions of release and federal law. During their first interview with Reynolds, she denied that Bartels possessed the gun. She told them facts which they later determined to be untrue. When they returned later that day, Bartels was present. They confronted both Bartels and Reynolds concerning the gun. According to Reynolds the agents were angry and threatening. They interviewed Bartels only about this new investigation and left without placing him under arrest.

■ Dismissal may be an appropriate remedy under the Due Process Clause when Government officials engage in outrageous conduct. *Rochin v. California,* 342 U.S. 165, 172–74, 72 S.Ct. 205, 209–11, 96 L.Ed. 183 (1952). Such conduct must offend "fundamental fairness, shocking to the universal sense of justice." *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); *see also United States v. Cuervelo,* 949 F.2d 559, 565 (2d Cir.1991).

Even if one accepts Bartels' descriptions of the behaviors of Hull and the Customs agents as accurate, this conduct was not sufficiently "outrageous" to implicate due process concerns. As to Hull, there is no indication that these alleged statements were made deliberately with an intention to deceive. The agents were investigating new crimes and did not engage in further interrogation concerning the instant offenses. No physical restraints were used. If there was psychological intimidation, it was not so shocking as to warrant dismissal of the indictment.

■ Bartels also failed to show any prejudice from these incidents. The plea agreement was withdrawn, and any testimony concerning its contents is inadmissible. No evidence was elicited during the agents' interviews, nor was Bartels ever placed in custody. Both of these incidents have absolutely no impact upon the existing criminal charges. Dismissal is entirely unwarranted.

## III. *Order*

For the reasons cited above, Defendant's Motion for Notice of Government's Intention to Introduce Other Crimes Evidence (Paper # 17) is GRANTED; Defendant's Motion in Limine To Suppress (Paper # 28) is DENIED; Defendant's Motion to Dismiss Defendant (Paper # 18) is DENIED; Defendant's Motion in Limine re: Withdrawn Plea Agreement (Paper # 19) is GRANTED; Defendant's Motion to Dismiss Defendant For Prosecutorial Misconduct (paper 35) is DENIED.